**Motion Granted in Part and Denied in Part, and Opinion on Motion issued July 26, 2022.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00578-CV

———————————

## JOAN GOTTLIEB MENDELL, Appellant

## V.

## LAURENCE SCOTT AND RACHEL CHAPUT, Appellees

---

On Appeal from the Probate Court No. 1
Harris County, Texas
Trial Court Case No. 475348

---

## OPINION ON MOTION

Pursuant to Texas Rule of Appellate Procedure 24.4(a), appellant Joan Gottlieb Mendell asks this Court to set aside the trial court's order requiring her to post a $435,666.46 bond to supersede part of a permanent injunction entered in favor of appellees Laurence Scott and Rachel Chaput (collectively, "appellees") and

against appellant individually and in her representative capacity as the trustee of a family trust. We grant appellant's motion in part, order the exclusion of interest from the amount of security, and remand to the trial court for the taking of evidence and a determination of whether the reduced amount of security is likely to cause appellant substantial economic harm. We deny appellant's motion in all other respects.

## Background

Appellant is the trustee of the MK Trust No. 2 ("Trust"). In April 2019, appellees filed suit against appellant in her individual and representative capacities, alleging that they were the beneficiaries of the Trust, the Trust had terminated by its own terms, and appellant had failed to wind-up the Trust and distribute the Trust assets to them. The Trust assets included four accounts: (1) a checking account at Iberiabank ("Checking Account"); (2) a money market account at Iberiabank ("Iberia Money Market"); (3) a money market account at UBS Financial Services Inc.("UBS Money Market"); and (4) stocks held with UBS Financial Services Inc. ("Stocks"). Appellees sought actual and exemplary damages for appellant's alleged breaches of fiduciary duties, declaratory and injunctive relief, and attorney's fees.

A jury returned a verdict in favor of appellees, and the trial court signed a final judgment declaring appellees beneficiaries of the Trust, which had terminated, and awarding $715,792.21 in damages and attorney's fees against appellant in her

individual capacity. The trial court also entered permanent injunctive relief against appellant in her individual and representative capacities. *See* TEX. PROP. CODE § 114.008(a)(3) (listing remedies for breach of trust, including injunctive relief). The injunction on review is the modified permanent injunction entered by the trial court on January 20, 2021.[1] The modified permanent injunction ordered that:

 i. [Appellant], in her capacity as trustee of the [Trust], shall wind-up the [Trust] within thirty (30) days of this Order and shall distribute all assets of the [Trust] to [appellees], in equal shares, in accordance with the Trust's terms.

 ii. [Appellant], individually, and in her capacity as trustee of the [Trust] shall be enjoined from selling, spending, or otherwise dissipating in any way any assets belonging to the Trust, including but not limited to reimbursement or further payment of attorney's fees that may have been incurred by [appellant] during the pendency of this litigation[.]

 iii. [Appellant] shall be denied compensation for serving as the trustee of the Trust and shall return to the [Trust] any trustee compensation which she paid herself from funds or property belonging to the [Trust.]

 iv. Any attorney's fees that were paid with funds or property belonging to the [Trust] shall be restored and returned to the Trust. This shall not be construed in a manner that would lead to [appellees] receiving a "double recovery" of the $200,000.00 awarded in actual damages against [appellant] at the October 22, 2020, jury trial in this matter.

---

[1] The trial court first entered permanent injunctive relief against appellant on the final day of trial in October 2020. On January 20, 2021, after post-trial proceedings and rendition of the final judgment, the trial court modified the permanent injunction. Accordingly, the provisions quoted and discussed herein are from the January 20 modified permanent injunction.

v.      [Appellant] shall provide a final accounting to [appellees] within thirty (30) days.

Appellant sought to suspend enforcement of the final judgment and the modified permanent injunction pending her appeal. To supersede the final judgment for money, appellant made a cash deposit into the registry of the trial court in lieu of posting a supersedeas bond. To determine the amount and type of security to supersede the modified permanent injunction—specifically, paragraphs (i) and (v)—appellant filed a motion in the trial court.

Relevant here, the trial court determined as to injunction paragraph (i), which required the winding-up and distribution of the Trust assets, that:

- "[I]t is a judgment for the recovery of personal property under Texas Rule of Appellate Procedure 24.2(a)(2)(B)."

- The value of the personal property on the date of the injunction was: (1) Checking Account, $51,347.73; (2) Iberia Money Market, $102,712.18; (3) UBS Money Market, $89,223.25; and (4) Stocks, $395,162.32.

- To supersede paragraph (i) as to the Checking Account, the Iberia Money Market, and the UBS Money Market, appellant must "close the [accounts] and deposit into the Registry of the Court [their] balance."

- To supersede paragraph (i) as to the Stocks, appellant "must post a good and sufficient bond with the Clerk of the Court under Texas Rule of Appellate Procedure 24.1(a)(2), (b) in the amount of $435,666.46, which represents the $395,162.32 in value of the Stocks . . . plus $40,504.14 in interest at the rate of 5% for two years for the estimated duration of the appeal."

As to injunction paragraph (v), which required a final accounting, the trial court determined:

- "[I]t is a judgment for something other than money or an interest in . . . property under Texas Rule of Appellate Procedure 24.2(a)(3)."

- No additional security was required to suspend enforcement of paragraph (v) because the amount to supersede paragraph (i) would "adequately protect [appellees] from loss or damage that the appeal might cause."

In ordering this security, the trial court rejected appellant's request that she be permitted to post alternative security in the form of (1) an order requiring UBS to freeze the Trust's account in which the Stocks are held ("freeze order"), or (2) an order allowing her to liquidate the Stocks for deposit into the trial court's registry.[2] Appellant argued these alternative forms of security were necessary because a surety would not accept the Stocks as collateral and the Trust lacked sufficient other assets to fully collateralize a bond.[3] And consequently, she could not obtain a supersedes

---

[2] Appellant argued a freeze order would both keep the Stocks secure pending the appeal and avoid the creation of tax liability that would result from liquidating the Stocks for deposit into the trial court's registry.

[3] Appellant attached to her motion seeking to clarify the supersedeas requirements correspondence received by her counsel in response to his request for information about obtaining an appeal bond from SureTec Insurance Company ("SureTec"). The responsive letter from SureTec's representative stated: "SureTec requires 100% collateral for an appeal bond, and will only accept cash collateral (wire transfer or a cashier's check) or an irrevocable letter of credit on an acceptable, preapproved bank." Appellant also attached her own affidavit averring that she was informed by a "Wealth Strategy Associate" at a UBS branch office that UBS would not issue "an irrevocable letter of credit using the Stocks as collateral."

5

bond in the amount required to suspend enforcement of injunction paragraphs (i) and (v). Alternatively, appellant requested that the amount of security be reduced to an amount that would not cause her or the Trust substantial economic harm.

**Legal Standards**

"A judgment debtor is entitled to supersede the judgment while pursuing an appeal[.]" *Miga v. Jensen*, 299 S.W.3d 98, 100 (Tex. 2009); *see also In re Longview Energy Co.*, 464 S.W.3d 353, 359 (Tex. 2015) (orig. proceeding) (observing supersedeas rules "respect[] the importance of the right to a meaningful appeal"). "Supersedeas preserves the status quo of the matters in litigation as they existed before the issuance of the order or judgment from which an appeal is taken." *Smith v. Tex. Farmers Ins. Co.*, 82 S.W.3d 580, 585 (Tex. App.—San Antonio 2002, pet. denied).

Texas Rule of Appellate Procedure 24 sets out the requirements for suspending enforcement of a judgment pending appeal in civil cases. *See* TEX. R. APP. P. 24.1–.4. Unless the law or the appellate rules provide otherwise, the judgment debtor may supersede the judgment by:

(1)    filing with the trial court clerk a written agreement with the judgment creditor for suspending enforcement of the judgment;

(2)    filing with the trial court clerk a good and sufficient bond;

6

(3)     making a deposit with the trial court clerk in lieu of a bond; or

(4)     providing alternate security ordered by the court.

TEX. R. APP. P. 24.1(a).

The amount of security required depends on the type of judgment. *See* TEX. R. APP. P. 24.2(a). A money judgment may be superseded by a bond, deposit, or security equal to "the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment," subject to certain limitations. TEX. R. APP. P. 24.2(a)(1). To supersede a judgment "for the recovery of an interest in real or personal property," the amount of security must be at least the value of the property interest on the date the trial court rendered judgment. TEX. R. APP. P. 24.2(a)(2). Finally, when the judgment is "for something other than money or an interest in property," the trial court must set the amount and type of security the judgment debtor must post. TEX. R. APP. P. 24.2(a)(3). The trial court may decline to permit the judgment debtor to supersede the judgment, however, if the judgment creditor posts "security ordered by the trial court in an amount and type that will secure the judgment debtor against any loss or damage caused by the relief granted" should an appellate court determine that the relief was improper. *Id.*

Rule 24.4 authorizes an appellate court to engage in a limited supersedeas review. *See* TEX. R. APP. P. 24.4. On any party's motion, we may review: (1) the

7

sufficiency or excessiveness of the amount of security, (2) the sureties on a bond, (3) the type of security, (4) the decision whether to permit suspension of enforcement, and (5) the trial court's exercise of discretion in ordering the amount and type of security. TEX. R. APP. P. 24.4(a). We may require that the amount of the "bond, deposit, or other security be increased or decreased" and that "another bond, deposit, or security be provided and approved by the trial court clerk." TEX. R. APP. P. 24.4(d). We may also require other changes in the trial court order and remand for entry of findings of fact or the taking of evidence. *Id.*

We generally review the trial court's supersedeas rulings for an abuse of discretion. *See EnviroPower, L.L.C. v. Bear, Stearns & Co.*, 265 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably considering all the circumstances of the case. *See Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011); *EnviroPower*, 265 S.W.3d at 1. But to the extent the ruling turns on a question of law, our review is de novo. *Abdullatif v. Choudhri*, 536 S.W.3d 48, 51 (Tex. App.—Houston [14th Dist.] 2017, op. on motion); *Mansik & Young Plaza LLC v. K-Town Mgmt., LLC*, 470 S.W.3d 840, 841 (Tex. App.—Dallas 2015, op. on motion).

**Analysis**

Appellant argues that the effect of the trial court's supersedeas order is to deny the Trust the ability to supersede parts of the modified permanent injunction pending an appeal. She contends the trial court abused its discretion in the three respects:

- by improperly ordering her, individually, to post supersedeas on behalf of the Trust, the true judgment debtor;

- by improperly applying the Finance Code provisions applicable only to "money judgments" to a judgment for the recovery of property; and

- by effectively preventing the true judgment debtor—the Trust— from superseding paragraphs (i) and (v) of the modified permanent injunction.

In addition, appellant complains the trial court failed to determine whether posting a bond in the amount required is likely to cause the Trust substantial economic harm.

**A.    Judgment debtor**

Appellant first contends the trial court abused its discretion by ordering her, individually, to suspend enforcement of paragraphs (i) and (v) of the modified permanent injunction as to the Stocks by posting a supersedeas bond on behalf of the Trust. Appellant argues that because the Trust is the "true judgment debtor," the trial court could not order her to "use her own personal funds" to supersede the modified permanent injunction as to the Stocks. We disagree that the trial court's supersedeas rulings require appellant to supersede the modified permanent injunction in her individual capacity, using "her own personal funds."

9

In Texas, "[a] trust is not a legal entity." *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009); *Tomlinson v. Khoury*, 624 S.W.3d 601, 608 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Rather, it is a "fiduciary relationship with respect to property." *Ditta*, 298 S.W.3d at 191 (quoting Tex. Prop. Code § 111.004(4)). Consequently, appellant's argument that the Trust is the "true judgment debtor" for the purpose of supersedeas misses the mark. The trial court did not enter the modified permanent injunction against the Trust; it ordered the injunctive relief against appellant, both individually and as trustee. The provisions that are the subject of appellant's Rule 24.4 motion—paragraph (i), compelling the winding-up and distribution of trust assets, and paragraph (v), requiring a final accounting—either expressly apply against appellant in "her capacity as trustee" or regard actions that can be taken by her only as trustee. But neither the trial court's oral statements at the supersedeas hearings nor its written order, entered after the supersedeas hearings, require appellant to secure a supersedeas bond using "her own personal funds."

Appellant's contention that the trial court is requiring her individually to supersede the modified permanent injunction is based on the trial court's oral statements at the February 22, 2021, hearing on her motion to set the amount and type of security. There, the trial court noted the security calculation for the Stocks required some "give and take" because of their nonliquidity, stating:

> [I]t seems to me that if [appellant] wants to maintain this appeal and she wants to supersede this injunction, then some of this needs to rest

> on her in her individual capacity because the permanent injunction was placed on her in her individual capacity in general. . . .
>
> . . .
>
> I would not permit [appellant] to use the trust funds to purchase the surety. She's going to have to dip into her own - - she's going to have to get some skin in the game for herself, and I don't think that [is] . . . too punitive and it allows her to do what she's asking and requesting to do, which is supersede the enforcement of this injunction.

Read in isolation, this statement appears to contemplate appellant's personal funds as collateral for a supersedeas bond. But later in the same hearing, the trial court clarified that it would allow appellant to use the Stocks—rather than her own funds—as collateral, noting that so long as any supersedeas bond was for the requisite amount, it was within the surety's purview to decide whether the Stocks were sufficient collateral.

After appellant learned that a surety would not accept the Stocks as collateral, she asked the trial court to clarify the bond requirements. The transcript of the April 15, 2021 hearing on appellant's motion to clarify shows that the trial court, again, did not mandate that appellant use "her own personal funds" as collateral. The trial court observed that "[t]here are all kinds of ways to get a surety bond," and posited that while appellant could elect to "put up her own cash[,]" she could also "get a surety bond that uses other collateral."

Likewise, the written supersedeas order issued by the trial court three months later, on July 20, 2021, did not require appellant to use "her own personal funds" to

11

collateralize a supersedeas bond. As to the Stocks, the supersedeas order provides only that appellant "must post a good and sufficient bond . . . in the amount of $435,666.46, which represents the $395,162.32 in value of the Stocks . . . plus $40,504.14 in interest at the rate of 5% for two years of the estimated duration of the appeal." It says nothing with respect to the mechanics of securing a supersedeas bond. Consequently, we conclude a bond collateralized by appellant's "own personal funds" is not a requirement of the supersedeas order, and thus appellant has not demonstrated an abuse of the trial court's discretion in this regard.

## B. Interest

Appellant also contends that the trial court abused its discretion by including interest in the amount of security required to suspend enforcement of paragraphs (i) and (v) of the modified permanent injunction as to the Stocks. We agree.

As stated, the amount of security depends on the type of judgment. *See* TEX. R. APP. P. 24.2(a). The modified permanent injunction's language compelling appellant to wind-up the Trust and distribute the Trust assets, including the Stocks, to appellees establishes that appellees' "recovery" includes "interest[s] in personal property." TEX. R. APP. P. 24.2(a)(2). An interest in stocks is personal property. *See, e.g.*, *Brosseau v. Ranzau*, 81 S.W.3d 381, 387 (Tex. App.—Beaumont 2002, pet. denied) ("In Texas, stock is considered personal property[.]"); *Griffith v. Jones*, 518 S.W.2d 435, 437 (Tex. App.—Tyler 1974, writ ref'd n.r.e.) ("Shares of corporate

12

stock are personal property in the nature of choses in action."). Consequently, Rule 24.2(a)(2) governs how appellant may supersede the challenged portions of the modified permanent injunction. *See* TEX. R. APP. P. 24.2(a)(2); *see also Abdullatif*, 536 S.W.3d at 55 (applying Rule 24.2(a)(2) to declaratory judgment and noting rule "does not say that a judgment for recovery of an interest in property must take a particular form or result from a suit asserting a certain cause of action").

Rule 24.2(a)(2) "restricts the trial court's discretion to determine the security necessary to supersede a judgment for recovery of property." *Id.* at 56. It sets the amount of security. *Id.* For personal property, the amount of security must be "at least . . . the value of the property interest on the date when the court rendered judgment[.]" TEX. R. APP. P. 24.2(a)(2)(B).

Well-settled principles guide us in determining the meaning of this directive: the same rules of construction apply to rules of procedure and to statutes. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012); *BASF Fina Petrochemicals Ltd. P'ship v. H.B. Zachry Co.*, 168 S.W.3d 867, 871 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). "When a rule of procedure is clear, unambiguous, and specific, we construe its language according to its literal meaning." *Bradt v. Sebek*, 14 S.W.3d 756, 762 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). "The Code Construction Act applies and, among other things, permits our consideration of the object sought to be attained, the circumstances under which the rule was enacted,

13

and the consequences of a particular construction." *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 681 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing TEX. GOV'T CODE §§ 311.002(a)(4), 311.023(1)–(3), (5)). The interpretation of procedural rules is a legal question and subject to de novo review. *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding).

Here, the trial court determined that the value of the Stocks was $395,162.32, a sum no party disputes. However, in addition to this amount, the trial court required any supersedeas bond to also include "$40,504.14 in interest at the rate of 5% for two years for the estimated duration of the appeal." Citing Rule 24.2 and the Texas Finance Code, appellant argues that interest may be included in the amount of security only for money judgments. *See* TEX. FIN. CODE § 304.003(a) ("A money judgment of a court of this state . . . earns postjudgment interest at the rate determined under this section"); TEX. R. APP. P. 24.2(a)(1) (providing when judgment is for recovery of money, amount of bond must equal sum of compensatory damages, interest for estimated duration of appeal, and costs). Appellees, on the other hand, defend the inclusion of interest as serving one purpose of supersedeas by protecting them against loss or damage the appeal might cause. Referencing Rule 24.2(a)(2)(B)'s language requiring the amount of the security to be "*at least* . . . the value of the property interest," *see* TEX. R. APP. P. 24.2(a)(2)(B) (emphasis added), they argue the "fair market value of the Trust securities on the date of the [modified

14

permanent injunction] is only a starting point" from which the trial court could reasonably require additional amounts to protect against any loss of Stock value during the appeal.

The only reference in Rule 24.2 to "interest for the estimated duration of the appeal" is found in the subsection applicable to judgments "[f]or the recovery of money." TEX. R. APP. P. 24.2(a)(1). Rule 24.2(a)(1) provides that, "[w]hen the judgment is for money, the amount of the bond . . . must equal the sum of compensatory damages awarded in the judgment [and] *interest for the estimated duration of the appeal*[.]" *Id.* (emphasis added). In contrast, the subsection applicable to judgments "[f]or recovery of property," which the trial court correctly determined applies, does not expressly include any provision for interest in the amount of security. *See* TEX. R. APP. P. 24.2(a)(2). We must view the omission as intentional. *See, e.g.*, *Fredericksburg Care Co. v. Perez*, 461 S.W.3d 513, 520 (Tex. 2015) (noting in statutory construction context that courts should presume legislature included words intentionally and omitted words purposefully); *Huston*, 359 S.W.3d at 681 (instructing rule of procedure must be "read as a whole to ascertain its intent").

Even assuming without deciding that the phrase "at least" in Rule 24.2(a)(2) confers the trial court with discretion to require security greater than the value of the property, the interest required by the trial court here essentially serves as a guarantee of the Stocks' performance for the estimated duration of the appeal, or stated

15

differently, security against market volatility. Nothing in Rule 24.2 suggests it is intended to provide such security for the speculative performance of stock. *Cf. Culbertson v. Brodsky*, 775 S.W.2d 451, 454 (Tex. App.—Fort Worth 1989, order) (construing predecessor to TEX. R. APP. P. 24.2(a)(3) and concluding it was "not the intent of any part of [the rule] to provide security for speculative damages such as the potential lost profits claimed by [the judgment creditor]"). To the contrary, such a construction would be counter to supersedeas's purpose in maintaining the status quo, which is the value of the Stocks at the time the trial court entered the modified permanent injunction. *See Smith*, 82 S.W.3d at 585 (supersedeas preserves status quo of matters in litigation as they existed before issuance of judgment from which appeal is taken). Consequently, we conclude the trial court abused its discretion by including interest in the amount of security to suspend enforcement of the modified permanent injunction as to the Stocks.

## C.     Alternate Security

Appellant also contends the trial court abused its discretion when it refused to suspend the modified permanent injunction, as to the Stocks, based upon alternate security. *See* TEX. R. APP. P. 24.1(a)(4). Appellant proposed two forms of alternate security: (1) a freeze order and (2) the liquidation of the Stocks and deposit of the proceeds into the trial court's registry.

Appellant concedes there is no case law addressing its alternate security proposals, and we have found none. On the issue of the trial court's discretion to order security other than that prescribed in Rule 24.2(a)(2) for judgments for recovery of property, however, we find our sister court's opinion in *Abdullatif* instructive. *See* 536 S.W.3d at 54–56. There, the underlying litigation concerned ownership interests in a limited partnership and a limited liability company which was the limited partnership's general partner. *Id.* at 49–50. The judgment awarded Ali Choudhri damages and declared his respective ownership interests in the two entities and the dates on which he obtained the ownership interests. *Id.* The trial court signed a supersedeas order, permitting the appellants "to supersede the judgment [in Choudhri's favor] with a cash deposit equal to the amount of damages plus applicable interest." *Id.* The order also appointed a Master in Chancery and "prohibited certain activities by the business entities as further security for Choudhri pending appeal." *Id.* at 50. The prohibited acts included making partnership distributions to any partner or purported partner, paying or incurring any expenditure outside the normal course of business without advance approval by the Master in Chancery, and paying or incurring any capital expenditure of more than $25,000 without the advance approval by the Master in Chancery. *Id.* at 56. Choudhri filed a motion with the appellate court arguing that the trial court's supersedeas order did not provide sufficient security for the declaratory portion of the judgment. *Id.*

17

The Fourteenth Court of Appeals, noting that an interest in a partnership and a membership interest in a limited liability company are personal property, concluded that Rule 24.2(a)(2) governed how the appellants could supersede the declarations. *Id.* The court also concluded that the appointment of the Master in Chancery and the prohibitions in the trial court's supersedeas order were not relevant to the supersedeas analysis because Rule 24.2(a)(2) "restricts the trial court's discretion to determine the security necessary to supersede a judgment for recovery of property." *Id.* The court held: "Under Rule 24.2(a)(2)(B), the trial court abused its discretion by not determining the value of the property interests it declared had been assigned to Choudhri and using that value to set the security appellants must post to supersede the [d]eclarations." *Id.*

With the *Abdullatif* reasoning in mind, we conclude the trial court did not abuse its discretion by rejecting a freeze order as alternate security. Here, except for its error in requiring interest to suspend enforcement of the modified permanent injunction as to the Stocks under Rule 24.2(a)(2)(B), the trial court complied with the prescribed formula by determining that the value of the Stocks was $395,162.32 on the date it entered the modified permanent injunction. *See* Tex. R. App. P. 24.2(a)(2)(B). Considering the potential for the Stocks' value to change according to the performance of the stock market—a factor for which the trial court reasonably expressed concern—a freeze order may or may not provide the minimum security

18

contemplated by Rule 24.2(a)(2). Accordingly, we cannot conclude the trial court was compelled to order a freeze of the UBS account in which the Stocks are held as alternate security. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding) (no abuse of discretion unless trial court could reasonably have reached only one decision); *EnviroPower*, 265 S.W.3d at 1 (abuse-of-discretion test depends on arbitrary or unreasonable action by trial court).

We further conclude the trial court did not abuse its discretion by refusing to permit the liquidation of the Stocks as alternate security. Such an order would be inconsistent with paragraph (ii) of the modified permanent injunction, which prohibits appellant, "individually, and in her capacity as trustee" from "selling, spending, or otherwise dissipating in any way any assets belonging to the Trust," a provision appellant has not addressed in her Rule 24.4 motion.

Still, we are mindful that the real gist of appellant's complaint is that there is insufficient collateral to obtain a supersedeas bond in the amount required by the trial court, thereby prohibiting suspension of enforcement of the modified permanent injunction as to the Stocks. We construe this complaint as including a challenge to the bond amount based on substantial economic harm under Rule 24.2(b), which appellant raised in the trial court and provides:

> The trial court must lower the amount of security required by [Rule 24.2](a) to an amount that will not cause the judgment debtor substantial economic harm if, after notice to all parties and a hearing, the court finds that posting a bond, deposit, or security in the amount

19

required by [Rule 24.2](a) is likely to cause the debtor substantial economic harm.

TEX. R. APP. P. 24.2(b).

Appellant had the burden to prove she would suffer substantial economic harm if the supersedeas amount was not decreased. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 170 (Tex. 2013); *Drake Interiors, Inc. v. Thomas*, 531 S.W.3d 325, 328 (Tex. App.—Houston [14th Dist.] 2017, order). Whether appellant is likely to suffer substantial economic harm is a question of fact, "which require[s] a showing both of irreparable harm to [appellant] and that a lesser amount would not substantially impair [appellees'] ability to recover under the judgment after appellate remedies [are] exhausted." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 170; *see also O.C.T.G., L.L.P. v. Laguna Tubular Prods. Corp.*, 525 S.W.3d 822, 831 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (noting question of fact). Appellant presented at least some evidence that she could not obtain the bond ordered by the trial court in the affidavits attached to her motion seeking to clarify the supersedeas requirement. Because no finding has been made as to whether a lesser amount of security will avoid substantial economic harm to appellant without substantially impairing appellees' ability to recover under the judgment after the

20

appeal is resolved, we will remand for the trial court to take evidence, make findings under Rule 24.2(b), and enter an appropriate order based on its findings.[4]

## Conclusion

In sum, we conclude the trial court abused its discretion by including in the amount of security "$40,504.14 in interest at the rate of 5% for two years for the estimated duration of the appeal." We therefore grant appellant's Rule 24.4(a) motion in part and order that the amount of security be reduced to no more than $395,162.32, which represents the amount required by Rule 24.2(a)(2) as the undisputed value of the Stocks at the time the trial court entered the modified permanent injunction. Because there remains a question on whether the amount of security required by Rule 24.2(a)(2) is likely to cause appellant substantial economic harm, we further remand for the trial court take evidence, make findings under Rule 24.2(b), and enter an appropriate order based on its findings. This Court's stay of enforcement of the modified permanent injunction will be lifted upon the filing in this Court of a supplemental clerk's record containing the order entered by the trial

---

[4] We note the trial court has continuing jurisdiction to handle these matters during the pendency of the appeal. *See* TEX. R. APP. P. 24.3(a). In addition, this opinion should not be read as preventing the parties from reaching an agreement for suspending enforcement of the modified permanent injunction as to the Stocks. *See* TEX. R. APP. P. 24.1(a)(1).

21

court, consistent with our opinion. Appellant's Rule 24.4(a) motion is denied in all other respects.

Amparo Guerra
Justice

Panel consists of Justices Landau, Guerra, and Farris.

Publish.